UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CURTIS L. BROWN                                                                                            PLAINTIFF

v.                                                                          CIVIL ACTION NO. 3:09CV-P990-S

CORRECT CARE INTEGRATED HEALTH *et al.*                        DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on motions to dismiss by Defendants Belcher, Brockman, Hamlin, Haney, Votaw, and Correct Care Integrated Health. Defendants seek dismissal on the ground that Plaintiff failed to exhaust all available administrative remedies prior to filing suit. Fully briefed, this matter is ripe for review. For the reasons set forth below, the Court will grant the motions to dismiss.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Curtis L. Brown, a convicted inmate currently incarcerated at the Kentucky State Reformatory ("KSR"), initiated this civil rights action pursuant to 42 U.S.C. § 1983 against Correct Care Integrated Health, Warden Steve Haney, ARNP Shelli Votaw, LPN Datha Belcher, RN Dolly Hamlin, and RN Vicki Brockman. Plaintiff complains that Defendants failed to properly treat his shoulder when he complained of pain in December of 2008, causing him to have to undergo surgery in May of 2009. Plaintiff alleges that the surgery was ineffective. Seeking only monetary relief, Plaintiff sued Defendants in both their official and individual capacities.

Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court dismissed Plaintiff's official-capacity

claims for money damages. It allowed the remainder of Plaintiff's claims to proceed for further development. Defendants have now moved to dismiss the complaint on the basis of exhaustion.

From the record, it appears that Plaintiff was at the Northpoint Training Center in Burgin, Kentucky, from January 26, 2006, until May 13, 2009. On May 5, 2009, Plaintiff filed administrative grievance number 09-287. Plaintiff stated: "This grievant has had limited usage of the right arm since Christmas Eve of 2008. Medical Department is aware of situation, yet has provided no treatment. UK Medical has diagnosed surgery needed. Risk of permanent paralysis."

Plaintiff was transferred to KSR on May 13, 2009. Plaintiff admits that he abandoned his grievance after his transfer. He explains: "Obviously, the transfer of Plaintiff from one institution to another, completely beyond his control, rendered it impossible for the Plaintiff to pursue the matter any further at the administrative level."

The Kentucky Department of Corrections (KDOC) has a written "Inmate Grievance Procedure." *See* Ky. Corr. Policies & Procedures 14.6. The three-step process for health care grievances is found in CPP 14.6 § II(K)(1)-(3). Under this process, an inmate must file a written grievance and seek an Informal Resolution. CPP 14.6 § II(K)(1)(a) and (b). If not satisfied there, he must make a written request for the Health Care Grievance Committee to consider his grievance. CPP 14.6§ II(K)(2). If not satisfied with the Health Care Grievance Committee's disposition, he may appeal the grievance for final administrative review by the Medical Director. CPP 14.6 § II(K)(3).

An inmate that is transferred during the grievance process can elect to continue with his grievance. CPP 14.6 § II(M)(2) ("The grievant shall decide whether to continue with a health care grievance that is still in the grievance process if he is transferred to another

institution."). The Inmate Grievance Procedure provides:

> a. To continue a grievance, the grievant shall notify in writing the Grievance Coordinator at his institution that he wants to continue a health care grievance prior to the transfer.
>
> b. The Grievance Coordinator at the institution that the grievance was filed shall retain the grievance information and see that records are maintained concerning the grievance. The Grievance Coordinator at the original institution and the institution where the inmate is currently incarcerated shall work together to send notice to the grievant of a recommendation or decision in the process.
>
> c. A grievance shall be discontinued if the written notice is not provided as required in this section, unless the grievant has already appealed the grievance for final administrative review.

CPP 14.6 § II(M)(2)(a)-(c). Plaintiff alleges that he was not able to comply with this provision because he did not know he was being transferred ahead of time.

## II. ANALYSIS

With respect to exhaustion, the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides that:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Because the PLRA requires "proper exhaustion" an inmate must comply with all of the prison's "deadlines and other critical procedural rules" to satisfy the exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "The PLRA's exhaustion requirement is a strict one. This is not to be harsh on prisoners, but to further the important goals behind the law: to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be

3

corrected, and to create an administrative record for those disputes that eventually end up in court." *Napier v. Laurel* County, 636 F.3d 218, 220 (6th Cir. 2011) (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)).

Plaintiff admits that he did not complete the grievance procedure. He contends that his failure to do so should be excused because he was transferred during the middle of the process. Additionally, Plaintiff contends that even if he had been aware of the grievance procedure regarding transfer, the prison rendered that procedure "unavailable" to him because he was not told he was going to be transferred ahead of time.

Plaintiff has not presented facts that are sufficient to excuse his failure to complete the grievance process. First, "[t]he transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for purposes of exhaustion." *Id*. Second, even if Plaintiff did not know about his transfer beforehand, he has not alleged that he took any affirmative action with respect to his grievance after arriving at KSR. "The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Id.*

### III. CONCLUSION

The PLRA requires prisoners to avail themselves of all available administrative remedies before filing suit. The KDOC's exhaustion procedures specifically allow an inmate to continue a health care grievance after transfer to a new facility. Plaintiff admits that he took no steps to

4

attempt to continue his grievance after his transfer.  Therefore, Plaintiff failed to exhaust all available administrative remedies.

Accordingly, by separate Order, the Court will grant Defendants' motions to dismiss, and dismiss this action in its entirety.

Date:

cc:     Plaintiff, *pro se*
        Counsel of record
4411.008